UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHAEL ALBRO,<br><br>      Plaintiff,<br><br>         v.<br><br>MARTIN O'MALLEY,[1]<br>Commissioner, Social Security<br>Administration,<br><br>      Defendant. | No. 23-cv-10534-DLC |

## MEMORANDUM AND ORDER

CABELL, U.S.M.J.

## I.    INTRODUCTION

Plaintiff Michael Albro ("plaintiff" or "Albro") moves to reverse or vacate a decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Social Security Disability Insurance (SSDI) benefits. (D. 14). He contends that the Administrative Law Judge (ALJ) who adjudicated his claim erred in determining that he was not disabled. The Commissioner disagrees and moves to affirm his decision. (D. 21).

---

[1] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner Kilolo Kijakazi. Thus, O'Malley is automatically substituted for Kijakazi as the defendant in this action pursuant to Federal Rule of Civil Procedure 25(d). This substitution has no meaningful impact on the litigation. *See* 42 U.S.C. § 405(g).

For the reasons that follow, the court denies the plaintiff's motion and affirms the Commissioner's decision.

## II.   PROCEDURAL HISTORY

The plaintiff applied for SSDI benefits on December 15, 2020. (Administrative Record [A.R.] 10).  The claim was denied on July 28, 2021, and then again on November 18, 2021, following reconsideration.  (*Id.*).  On December 13, 2021, the plaintiff requested an administrative hearing, which was held on June 3, 2022.  (*Id.*).  On August 30, 2022, the ALJ issued a decision denying the plaintiff's application.  (*Id.* at 26).  On November 23, 2022, the plaintiff requested that the Appeals Council review the ALJ's decision.  (*Id.* at 32).  On January 6, 2023, the Appeals Council denied the request for review, (*id.* at 1), making the ALJ's decision the final decision of the Commissioner.  *See Sims v. Apfel*, 530 U.S. 103, 106 (2000).  The plaintiff timely filed an appeal on March 10, 2023.  (D. 1).

## III. STATUTORY AND REGULATORY FRAMEWORK

To obtain disability benefits, a claimant must prove that he is disabled, meaning that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a) ("To meet this

definition, you must have a severe impairment(s) that makes you unable to do your past relevant work . . . or any other substantial gainful work that exists in the national economy.").

Claims for disability benefits are evaluated by an ALJ following a mandated five-step procedure.[2]  20 C.F.R. § 404.1520. At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), meaning "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit," 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, then he is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is not engaged in such activity, the ALJ moves to step two.

At step two, the ALJ "consider[s] the medical severity of [the claimant's] impairment(s)."  20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. § 404.1522(a).  If the claimant does not have at least one severe medically determinable impairment or a combination of impairments that are collectively severe, or if his severe impairments are not expected to result in death or last for a

---

[2] The ALJ may end the inquiry at an earlier step if she can definitively determine that the claimant is or is not disabled at that step.  20 C.F.R. § 404.1520(a)(4).

continuous period of at least 12 months, then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *see* 20 C.F.R. § 404.1509 (setting out duration requirement).  If, though, the claimant does have one or more severe impairments, the ALJ moves to step three.

At step three, the ALJ determines whether one or more of the claimant's impairments "meets or equals one of our listings in [20 C.F.R. Pt. 404, Subpt. P, App'x 1] and meets the duration requirement."  20 C.F.R. § 404.1520(a)(4)(iii).  If an impairment matches or is functionally equivalent to a listed condition and satisfies the duration requirement described in step two, then the claimant is disabled.  *Id.*  If not, the ALJ moves to step four.

Step four considers the claimant's residual functional capacity (RFC) to work.  This step entails a two-part inquiry. The ALJ first determines the claimant's RFC to work at all, that is, his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. § 416.920(e).  If he cannot, the claimant is disabled.  If he is able to do some work, the ALJ then determines whether the claimant has the RFC to perform the requirements of his past relevant work.  20 C.F.R. § 416.920(f).  If the claimant has the RFC to do his past relevant work, he is not disabled.  *Id.* However, if the claimant is not able to do any past relevant work, the analysis proceeds to the fifth and last step, which entails asking whether, given the claimant's RFC, age, education, and work

experience, he can perform other specific jobs that exist in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001). If the claimant can perform another such job, then he is not disabled; if he cannot, he is disabled. 20 C.F.R. § 404.1520(a)(4)(v).[3]

## IV. RELEVANT BACKGROUND

In summarizing the relevant portions of the record, the court focuses principally on the evidence relating to the impairments the plaintiff contends supported his disability claim, namely his pancreatitis and his reported need to use a cane to ambulate.

### A. Albro's Background and Application for SSDI Benefits

The plaintiff filed an application for SSDI benefits on December 16, 2020, with an alleged disability onset date of February 28, 2020. (A.R. 228).[4] At the time the ALJ denied his application, the plaintiff was 50 years old. (*Id.*). The plaintiff attained at least a 12th grade education, (*id.* at 130), and he testified that he attended two years of college to earn his optician's license, (*id.* at 46). He worked in optometry until

---

[3] At the first four steps of the process, the claimant bears both the burden of production and the burden of proof. *Sacilowski v. Saul*, 959 F.3d 431, 434 (1st Cir. 2020) (citing *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001)). At step five, the burden shifts to the Commissioner to "come forward with evidence of jobs in the national economy that the claimant is able to perform." *Id.*

[4] The plaintiff previously filed applications for disability insurance benefits and supplemental security income on November 30, 2018, with an alleged disability onset date of March 31, 2018. (A.R. 97). After a hearing, an ALJ denied that application on February 27, 2020. (*Id.* at 94–108).

around 2003, when he began working as an arborist. (*Id*. at 17, 47-48).   In 2004, during the plaintiff's time as an arborist, a tree fell on him, resulting in a crushed skull and a traumatic spinal injury.   (*Id*. at 307).   After the accident, the plaintiff worked as a radon gas remover from 2006 to 2010, (*id*. at 258-61), a tea hand packer from 2010 to 2013, (*id*.), and a glass bottle auditor from 2014 to 2018, (*id*.).[5]   He last worked in 2018.   (*Id*. at 58, 258-59).

**B.   The Plaintiff's Medical History**

As a result of the plaintiff's 2004 injury, he developed a thoracic spine injury, a seizure disorder, a mood disorder, and attention deficit disorder.   (*Id*. at 563).   The plaintiff's medical records reflect an extensive history of alcohol abuse and at least eight hospitalizations for alcohol-related pancreatitis.   (*Id*. at 1121, 1014).   His first such hospitalization was on August 14, 2013, when he underwent an upper GI endoscopy.   (*Id*. 1019).   Subsequent hospitalizations occurred on March 30, 2019, October 5, 2019, November 19 and 20, 2019, May 20, 2020, October 2, 2021, and December 18, 2021.   (*Id*. at 418, 426, 430, 488, 445, 1013, 1245).   During the plaintiff's October 5 and November 19 hospitalizations, the physical exam reports stated that his sole abnormality was a

---

[5] The plaintiff testified that he worked as a plastic roller attendant in 2012 for several months; however, there is no official documentation of that work in the Administrative Record. (A.R. 54).

tender abdomen with diffuse pain caused by his pancreatitis.  (*Id.* at 468, 479).

Regarding the plaintiff's ability to walk, progress notes from several visits to Greater Milford Neurology on June 29, 2015, July 27, 2015, November 25, 2015, August 29, 2018, January 30, 2020, and November 13, 2020, all indicated that his muscle tone, bulk, power, and range of motion were normal.  (*Id.* at 390, 393, 396, 399, 402-03, 409-10).  The same notes stated that the plaintiff maintained a steady and normal gait with no shuffling or ataxia with a normal tandem walk. (*Id.*).  Further, the plaintiff's head, eyes, neck, back, upper and lower extremities, motor function, and gait were normal.  (*Id.* at 468).  During the plaintiff's hospitalization on October 5, 2019, nurse notes reflect that the plaintiff ambulated with a steady gait without assistance.  (*Id.* at 473).

### C.   Nurse Practitioner Brinkman's Notes

The plaintiff's first visit with his primary care provider, Kimberly Brinkman, NP ("NP Brinkman"), was on August 21, 2020. (*Id.* at 566).  The report from that visit stated that the plaintiff denied an unsteady gait and affirmed that he ambulated independently at that time.  (*Id.* at 567).  NP Brinkman later wrote a narrative letter on January 20, 2021, noting that the plaintiff suffered from severe chronic bilateral low back pain that

negatively impacted his ability to walk, sit for long periods of time, and sleep. (*Id.* at 563).

On August 31, 2021, NP Brinkman indicated that she completed the required paperwork for the plaintiff to obtain a handicapped parking placard. (*Id.* at 1084).

NP Brinkman wrote another narrative letter on September 14, 2021, in which she described the plaintiff's lower back pain as worsening over the years. (*Id.* at 802). She also mentioned that the plaintiff found it difficult to stand, walk, or sit for long periods of time. (*Id.*). She also noted for the first time that the plaintiff "ambulates with a cane." (*Id.*).

On October 20, 2021, NP Brinkman assessed the plaintiff and noted her inability to prescribe narcotics to help alleviate his back pain due to his cocaine and alcohol abuse. (*Id.* at 1121).

On May 13, 2022, NP Brinkman completed a questionnaire regarding the plaintiff's functional capacity, medical treatment history, various negative symptoms stemming from his trauma and disorders, and his ability to walk. (*Id.* at 1502-05). Where the questionnaire asked, "While engaging in occasional standing/walking, must your patient use a cane or other hand-held assistive device?[,]" NP Brinkman marked the box labeled "Yes." (*Id.* at 1504). In response to the follow-up question that asked what symptoms caused the need for a cane, NP Brinkman checked the boxes for imbalance, pain, and weakness. (*Id.*).

**D.   Assessments**

In addition to the medical evaluations and progress notes listed above, the record also contains four assessments of the plaintiff's impairments from state agency physicians and psychologists.

   1.   *Elaine Hom, M.D.*

On March 25, 2021, after reviewing the plaintiff's medical records, Dr. Hom opined that the plaintiff had a steady gait, could lift and/or carry 10 pounds frequently and 20 pounds occasionally, could stand and/or walk for 4 hours, and could sit for about 6 hours in an 8-hour workday. (*Id.* at 124). Dr. Hom noted that the plaintiff used a cane, but she did not specify the frequency or degree of necessity for its use. (*Id.* at 125).

   2.   *Meghan Searl, Ph.D.*

On June 18, 2021, after reviewing the plaintiff's medical records, Dr. Searl opined that it would be difficult to determine the severity of the plaintiff's functional limitations due to his history of cocaine and alcohol abuse, as both substances could be interfering with his antiepileptic medications, cognitive ability, and mood. (*Id.* at 123). Dr. Searl estimated that the plaintiff's "psych-related limitations would be mild to moderate in the context of sobriety and treatment adherence." (*Id.*).

      3.    *K. Collins-Wooley, Ph.D.*

On September 10, 2021, Dr. Collins-Wooley reviewed the plaintiff's medical records in response to the plaintiff's request for reconsideration of the initial denial of his application for benefits. (*Id.* at 129-32).  Dr. Collins-Wooley's opinion was "consistent with" Dr. Searl's assessment.  (*Id.* at 132-33).

      4.    *John Jao, M.D.*

On September 22, 2021, Dr. Jao reviewed the plaintiff's medical records in response to the plaintiff's request for reconsideration.  (*Id.* at 133-35).  Dr. Jao's findings mirrored Dr. Hom's opinion as to the plaintiff's functional capacity. (*Id.*).

**E.   Administrative Hearing Testimony**

The ALJ held a hearing on June 3, 2022, at which the plaintiff and a vocational expert testified.  (*Id.* at 39).  When asked if his recurring pancreatitis was still a problem, the plaintiff testified that it was not, largely because he had allegedly stopped drinking.  (*Id.* at 64).  When the ALJ asked the plaintiff if he needed any assistive devices to get around, the plaintiff replied that he had a cane and a walker that he used, in addition to a handicap placard for his car.  (*Id.* at 69).

The vocational expert testified in response to three hypothetical questions posed by the ALJ regarding a claimant with various ailments and limitations.  (*Id* at 83-88).  The first hypothetical question was as follows:

> Assume if you will then a hypothetical person is of the same age, education and work background as the Claimant. And further assume that if there's work such a person could perform, they would be subject to the following limitations. This person would be able to lift and carry 20 pounds occasionally and 10 pounds frequently. Would be able to stand and/or walk . . . for four hours in an eight-hour workday over a 40-hour workweek. Would be able to sit for six hours in an eight-hour workday over a 40-hour workweek. Would occasionally be able to climb stairs and ramps, but never ropes, ladders, or scaffolds. Would occasionally be able to balance, stoop, crouch, kneel, and crawl. This person would have to avoid concentrated exposure to unprotected heights and moving and dangerous machinery . . . . [T]hose would be the limitations for Hypothetical Person #1. Would that person be able to perform any of the past work of the Claimant?

(*Id.* at 83).

The vocational expert testified that Hypothetical Person #1 would not be able to perform any of the plaintiff's past jobs as ordinarily described because of the standing required for those light jobs. (*Id.* at 83). However, the vocational expert noted that the plaintiff reported that he was allowed to perform his previous jobs as a tea packer, bottle inspector, and plastic roller attendant while sitting, and that Hypothetical Person #1 could perform those jobs under those conditions. (*Id.* at 83-84). The vocation expert also provided three new jobs that could accommodate Hypothetical Person #1: parking garage cashier, ticket seller, and garment sorter. (*Id.* at 85).

The second hypothetical question presented a similar scenario:

> Now, assume if you will, that our second hypothetical
> person has the same hypothetical profile as Hypothetical
> Person #1, but in addition, this person would be able to
> understand and carryout [sic] instructions for simple
> routine tasks and maintain concentration, persistence,
> and pace in the performance of these tasks for two-hour
> increments over an eight-hour workday during a 40-hour
> workweek.  Would any of the past work of the Claimant be
> available?

(*Id.* at 86-87).  In response to this question, the vocational

expert testified that, except for the bottle inspector

position, all the jobs that accommodated Hypothetical Person

#1 would be suitable for Hypothetical Person #2.  (*Id.* at 86-

87).

Finally, the ALJ posed a third hypothetical:

> Now, assume if you will, that our third hypothetical
> person has the same hypothetical profile as Hypothetical
> Person #1, but in addition, this person would have the
> following limitations.  This person would be able to sit
> for less than two hours in an eight-hour workday, stand
> and/or walk for less than two hours in an eight-hour
> workday.  This person would have to take unscheduled
> breaks during a workday.  This person would occasionally
> be able to lift or carry less than ten pounds.
> Occasionally would be able to twist.  Would never be
> able to stoop, crouch, climb.  This person would be able
> to use the bilateral upper extremities for grasping and
> turning only 10% of a normal workday.  Fine manipulation
> 40% and reaching 10%.  This person would be off task 25%
> or more during a normal workday on a regular and
> sustained basis.  And would be absent four times per
> month on a regular and sustained basis.  Would that
> person be able to perform any work in the regional or
> national economy?

(*Id.* at 87-88).  The vocational expert testified that there were

no jobs in the national economy that Hypothetical Person #3 could

perform, primarily due to that person's limitations in the use of

12

his upper extremities, but also because "full-time work is not possible based on the sitting of less than two hours [and] standing less than two hours."  (*Id.* at 87-88).

**F.   The ALJ's Decision**

On August 30, 2022, the ALJ issued a written decision denying the plaintiff's disability claim.  (*Id.* at 7).

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of February 28, 2020  (*Id.* at 12).

At step two, the ALJ found that the plaintiff "had the following severe impairments: epilepsy, thoracic degenerative disc disease, depressive disorder, substance abuse disorder, anxiety disorder, and depressive disorder."  (*Id.*).  The ALJ found the plaintiff's medically determinable impairments of pancreatitis and hepatitis C to be non-severe.  (*Id.*).  Specifically, the ALJ noted that "there is no medical evidence that these impairments more than minimally affected the [plaintiff's] daily activities when refraining from substance abuse as well as adhering to medication management."  (*Id.* at 13).

At step three, the ALJ found that the plaintiff "d[id] not have any impairment[s] or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 4040, Subpart P, Appendix 1."  (*Id.*).

At step four, the ALJ found that the plaintiff "ha[d] the residual functioning capacity to perform light work" subject to the limitations he described in the second hypothetical he posed to the vocational expert. (*Id*. at 16).  The ALJ went on to find that the plaintiff could perform his past relevant worker as a tea packer and a plastic roller attendant.  (*Id.* at 24).

The ALJ could have stopped there given his finding but opted to go on to make alternative findings at step five. (*Id*.).  The ALJ found that the plaintiff could work as a cashier parking lot attendant (a position for which 49,000 jobs are available in the national economy), a ticket seller (21,000 jobs), or a garment sorter (27,000 jobs). (*Id*. at 25).

Based on the plaintiff's ability to perform past relevant work as well as his ability to perform other jobs that existed in significant numbers in the national economy, the ALJ determined that the plaintiff had not shown a disability. (*Id*. at 24-26).

V.   **DISCUSSION**

The plaintiff asserts that the ALJ erred by:  (1) finding at step two that his pancreatitis was not a severe impairment; (2) discrediting the supportive opinion of NP Brinkman, which in turn impacted the ALJ's steps four and five assessments; and (3) disregarding the plaintiff's need for a cane based on a lack of any formal prescription, which, presumably, similarly impacted the

ALJ's steps four and five assessments.  Addressing each in turn, the court discerns no error.

### A.    Standard of Review

Pursuant to the Social Security Act, the court may affirm, modify, or reverse the final decision of the Commissioner, "with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The court must affirm the ALJ's decision if it employs the correct legal standard and is supported by substantial evidence.  *Sacilowski*, 959 F.3d at 437; *see Rodriguez Pagan v. Sec'y of Health and Hum. Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) ("We must affirm the [agency's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Dunn v. Colvin*, Civil Action No. 15-13390-PBS, 2016 WL 4435079, at *7 (D. Mass. Aug. 19, 2016) (quoting *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988)).  Although "the threshold for such evidentiary sufficiency is not high, . . . [it] is 'more than a mere scintilla.'"  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Concordantly, "[t]he ALJ's findings of fact . . . are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

B.   **Severity of the Plaintiff's Pancreatitis**

The plaintiff argues that the ALJ erred in concluding at step two that his pancreatitis was not a severe impairment.   The plaintiff asserts that his frequent hospitalizations for pancreatitis alone demonstrate that he would experience significant absenteeism from any job, thus significantly diminishing his ability to work.   *C.f.* 20 C.F.R. § 404.1522 ("An impairment . . . is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").   To substantiate his argument that the absenteeism caused by his hospitalizations would significantly limit his ability to work, he points to hearing testimony from the vocational expert, who indicated that absences of one day per month would likely disqualify someone from full-time work in the kinds of jobs available to the plaintiff.   (A.R. 91).   This argument fails for two reasons.

First, the issue is not whether there was any evidence tending to support the plaintiff's assertion that his pancreatitis was severe -- the court assumes arguendo that there was, but whether there was substantial evidence in the record to support the ALJ's determination that it was not.   There was.   Most notably, the plaintiff himself testified at the administrative hearing that his pancreatitis was no longer a problem and that he had not experienced any symptoms for some time, likely because he stopped

drinking.   Although the plaintiff did not indicate when he reportedly stopped drinking, his testimony was consistent with the fact that he had not been hospitalized since December 2021, approximately six months earlier.   The ALJ was of course entitled to rely on the plaintiff's own testimony in finding that his pancreatitis was not severe.[6]  *Cf. Purdy v. Berryhill*, 887 F.3d 7, 11 (1st Cir. 2018) (noting that ALJ discredited plaintiff's testimony based on her earlier written statements about her capacity to perform daily activities).

Second, even if the ALJ did err in determining that the plaintiff's pancreatitis was not a severe impairment, the error was harmless here and would not warrant reversal or remand.   *See Colon v. Saul*, 463 F. Supp. 3d 66, 75 (D. Mass. 2020) (citing *Perez Torres v. Sec'y of Health and Hum. Servs.*, 890 F.2d 1251, 1255 (1st Cir. 1989)) ("Upon finding of error, this Court will not reverse the Commissioner's decision if the error is 'harmless.'").   Because the ALJ found that the plaintiff had other severe impairments, he was required to consider all of the plaintiff's impairments, severe and non-severe, in determining his RFC at step four.   *Andrade v. Colvin*, Civil Action No. 14-12153-JGD, 2015 WL

---

[6] It bears noting that a condition is "severe" if it "significantly limits the claimant's 'physical or mental ability to do basic work activities.'"  *Lopez v. Kijakazi*, --- F. Supp. 3d ---, 2023 WL 8374603, at *2 (D. Mass. 2023) (quoting 20 C.F.R. § 404.1522(a)).   While absenteeism might certainly affect one's ability to maintain employment, it does not necessarily bear on one's ability to do the work when present.  *See* 20 C.F.R. § 404.1522(b) ("When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.").

5749446, at *6 (D. Mass. Sept. 30, 2015) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).   Consistent with this obligation, the ALJ did in fact consider and discuss the plaintiff's pancreatitis at length at step four, despite having found it to be a non-severe impairment.   Because the ALJ considered the plaintiff's pancreatitis at step four, it is demonstrably the case that no harm flowed from the ALJ's step-two finding that the impairment was not severe.   Any such error in his step-two finding therefore "would not warrant a ruling in favor of the plaintiff." *Id.*; *accord Furey v. Saul*, 501 F. Supp. 3d 29, 51 (D. Mass. 2020); *Lord v. Berryhill*, Civil Action No. 18-475-LM, 2019 WL 4018308, at *5 (D.N.H. July 23, 2019).

### C.  Nurse Practitioner Brinkman's Medical Opinion

Next, the plaintiff argues that the ALJ erred in discounting NP Brinkman's medical opinion that the plaintiff was unable to work any longer due to his chronic back pain. (*Id.* at 563).[7]  The Commissioner argues that the ALJ's finding that NP Brinkman's opinion was unpersuasive is supported by substantial evidence. The court agrees with the Commissioner.

---

[7] In the heading for this section in his memorandum, the plaintiff asserts that the ALJ both failed to apply the correct legal standard and made factual findings that are not supported by substantial evidence.  (D. 14, p. 6).  However, the plaintiff fails to develop any argument articulating how the ALJ applied the wrong standard and any such argument is therefore deemed waived.  *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed.").

In evaluating an application for benefits, an ALJ does not "defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from a claimant's treating physician(s). 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers the persuasiveness of each medical opinion through the lens of five factors:

> Supportability (the relevance of the opinion's cited objective medical evidence), consistency (how consistent the opinion is with all of the evidence from medical and non-medical sources, treatment/examining relationship (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, and existence and extent of treatment/examining relationship), specialization (the relevance of the source's specialized education or training to the claimant's condition), and what the Administration refers to as "other factors" (the medical source's familiarity with the claimant's medical record as a whole and/or with the Administration's policies or evidentiary requirements).

*Shaw v. Saul*, Civil Action No. 19-730-LM, 2020 WL 3072072, at *4 (D.N.H. June 10, 2020) (citing 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5)) (emphasis deleted). "Of the five factors, the 'most important' are supportability and consistency." *Id.* (citing 20 C.F.R. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 416.920c(b)(2)).

The essence of NP Brinkman's opinion, according to the ALJ, was that "the claimant could not walk for more than one city block, could not sit for more than 10 minutes at one time, could not stand for more than 5 minutes at one time, and would be off task for

more than 25% of the time as well as be expected to miss more than four days per month due to his impairments." (*Id.*).  In assessing the persuasiveness of her opinion, the ALJ considered it in conjunction with the assessments from the state agency physicians and determined that her findings "were not consistent with nor supported by the longitudinal treatment record." (A.R. 23).  The ALJ specifically noted the inconsistencies between NP Brinkman's opinion and the treatment record: (1) the plaintiff "regularly arrived at his appointments ambulating on his own with a normal steady gait," (*id.*); (2) "[n]umerous physical and mental status examinations noted the claimant's symptoms were within normal limits," (*id.*); (3) "there was no evidence that the claimant was unable to walk at any point in the treatment record," (*id.*); (4) although there was evidence that the plaintiff used a cane, there was no evidence that he had a prescription for the cane, (*id.* at 24); and (5) NP Brinkman noted that the plaintiff's abuse of alcohol and other substances prevented him from receiving possible remediating treatment, (*id.*).

The plaintiff homes in on the ALJ's third enumerated remark above that there was no evidence in the record that the plaintiff was unable to walk.[8]  The plaintiff asserts that this observation is not actually inconsistent with NP Brinkman's opinion, as she

---

[8] The plaintiff also takes issue with the ALJ's focus on the lack of a prescription for his cane.  That issue is discussed below.

never opined that the plaintiff was completely unable to walk, but only stated that he was unable to walk for a long period of time or for significant distances.  Thus, according to the plaintiff, the ALJ clearly erred by finding that NP Brinkman's opinion was inconsistent with the treatment record.

The court understands the plaintiff's argument but finds it to be of little force because it places too much weight on a small discrepancy that appears to be nothing more than an issue of semantics or phraseology.  NP Brinkman opined that the plaintiff could not walk for more than one city block at a time.  It is fair to read the ALJ's remark in context as commenting on this opinion, i.e., as indicating that the record lacked any evidence corroborating the plaintiff's asserted walking limitations.  This seems especially likely given that the ALJ had just noted that the plaintiff regularly appeared at his appointments walking steadily on his own. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole.").[9]

Even if the ALJ's observation about the plaintiff's ability to walk does not truly contradict NP Brinkman's opinion, the plaintiff fails to explain why the other discrepancies the ALJ

---

[9] To the extent the plaintiff argues that the ALJ failed to support his assertion that the plaintiff appeared at his appointments with a normal gait, the numerous citations following the very next sentence, wherein the ALJ noted a lack of evidence that the plaintiff was unable to walk, clearly support both propositions.  Indeed, the citations are largely to the very progress notes described in the first of the two sentences.

noted fail to support his finding that her opinion was not persuasive. In this regard, the remainder of the plaintiff's argument focuses on the contents of NP Brinkman's treatment notes and their consistency with two progress notes in the record from other providers. However, and as noted above, the issue for this court is not whether NP Brinkman's opinion was consistent with some portions of the treatment record, but rather whether the ALJ's finding that her opinion was not persuasive is supported by substantial evidence in the record, even if that same record could arguably also justify a different conclusion. *Rodriguez Pagan*, 819 F.2d at 3. The court is satisfied that the ALJ applied the correct legal standard and based his decision on substantial evidence in the record. Nothing more is required.

**D.   Medical Necessity of the Plaintiff's Cane**

Finally, the plaintiff argues that the ALJ erred by disregarding his need for a cane based on the lack of a formal prescription in the record. Specifically, the plaintiff argues that the ALJ committed legal error by insisting on a formal prescription when there was other adequate evidence in the record that the plaintiff had a medical need for a cane, including an "unambiguous opinion from [NP Brinkman] stating . . . an assistive device is medically necessary." *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012). Assuming without deciding that the ALJ

applied the incorrect legal standard, any such error was harmless and does not warrant remand.

At both steps four and five, the ALJ found that there were tasks or jobs the plaintiff could perform based on his RFC. Notably, the ALJ specifically discussed the plaintiff's diminished ability to stand and walk, which would ordinarily disqualify him from "light work" jobs. (A.R. 25). He further explained that the vocational expert testified, based on his own experience, that the plaintiff would be able to perform the jobs identified while sitting, or at least with a reduced level of standing and/or walking. (*Id.*). The record thus reflects that the ALJ's assessment of the plaintiff's RFC and capacity to perform certain jobs already incorporated the plaintiff's difficulties standing and walking. As such, a finding that the plaintiff's use of a cane was medically necessary would not have meaningfully impacted the ALJ's determinations at steps four and/or five. Consequently, even assuming there was error, reversal would not be warranted where it likely did not substantially influence the outcome of the plaintiff's claim. *Cf. Colon*, 463 F. Supp. 3d at 75.

**VI.   CONCLUSION**

For the foregoing reasons, the plaintiff's motion to reverse or remand is DENIED, and the Commissioner's motion to affirm is GRANTED.

<u>/s/ Donald L. Cabell</u>
DONALD L. CABELL, U.S.M.J.

DATED: July 12, 2024